## SMITH et al. v. GILLIAM et al.

(District Court, W. D. Kentucky. May 31, 1922. Supplemental Opinion, September 18, 1922.)

1. **Constitutional law** ⊙⇒70(3)—**Courts cannot make material alterations to legislative language.**

   The law is made by the Legislature and applied by the judiciary, and the courts cannot make material additions to the language used by the legislative department, even though they think such addition might be an improvement, or meet conditions which could have been, though in fact not, within the purview of what was actually done by Congress.

2. **Removal of causes** ⊙⇒21—**Prohibition officers not entitled to remove actions as "revenue officers" acting under "revenue laws."**

   The incidental receipt of money by the government or its officers under the National Prohibition Act does not make it a "revenue law," and prohibition officers are not "revenue officers," within Judicial Code, § 33, as amended by Act Aug. 23, 1916 (Comp. St. § 1015), authorizing revenue officers to remove civil suits against them on account of any act done under color of their office or of any revenue law.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Revenue Law; Revenue Officer.]

### Supplemental Opinion.

3. **Removal of causes** ⊙⇒21—**Persons appointed by Commissioner of Internal Revenue held merely prohibition officers.**

   As respects their right to remove causes as revenue officers, within Judicial Code, § 33, as amended by Act Aug. 23, 1916 (Comp. St. § 1015), persons appointed and commissioned by the Commissioner of Internal Revenue as heads of a prohibition field force, with authority to execute and perform all duties delegated to such officers by law, were prohibition agents or officers, and nothing more.

4. **Removal of causes** ⊙⇒21—**National Prohibition Act does not entitle prohibition officers to have case removed.**

   National Prohibition Act, § 28, providing that the Commissioner of Internal Revenue, his assistants and agents, shall have all the power and protection in the enforcement of that act conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors, refers to the power to enter distilleries, and, if admission is refused, to break in, under Rev. St. §§ 3177, 3276 (Comp. St. §§ 5900, 6016), to collect taxes by distraint, and, if needful, make repeated seizures, under section 3187 (Comp. St. § 5909), to break up and into the ground of distillery premises, under section 3277 (Comp. St. § 6017), to make seizures of property, under sections 3166, 3200, 3453, 3460 (Comp. St. §§ 5886, 5922, 6355, 6362), and to have search warrants issued, under section 3462 (Comp. St. § 6364), and to the right to be protected in the exercise of such powers, and does not extend to prohibition officers and agents the right to remove suits against them given revenue officers by Judicial Code, § 33, as amended by Act Aug. 23, 1916 (Comp. St. § 1015).

5. **Statutes** ⊙⇒217—**History of times, including discussions before committees, may be considered in construction.**

   In construing statutes, ambiguous or otherwise of doubtful meaning, it is permissible to seek information from the history of the times when the

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

legislation was in preparation for enactment, including discussions and explanations before congressional committees.

**6. Removal of causes ⊕—16—Refused when not authorized by law.**

While a case should always be removed when authorized by law, a removal not so authorized should always be refused, and the previously acquired jurisdiction of the state court respected.

**7. States ⊕—4—Federal statutes are supreme, and protect citizens in the state courts, as in the federal courts.**

The laws of the United States are supreme, and protect citizens sued for death in the state courts as fully as in the federal courts, whether the plea therein be self-defense, or one based on conduct made lawful by some statute of the United States or of the state.

At Law. Action by Lucy Smith and others, the widow and children of Francis M. Smith, deceased, against N. C. Gilliam and others. On motion to remand to the state court. Motion granted.

Nat. W. Halstead, of Bardstown, Ky., and Perry B. Miller, of Louisville, Ky., for plaintiffs.

B. J. Bethurum, of Lexington, Ky., Legal Adviser to Federal Prohibition Director for Kentucky, for defendants.

WALTER EVANS, District Judge. This action was brought in the Nelson circuit court. The plaintiffs seek a recovery from the defendants upon allegations made in their petition to the general effect that defendants, N. C. Gilliam, H. C. Blincoe, F. G. Fields, and A. F. Fields did, on November 17, 1921, in the county of Nelson and state of Kentucky, wrongfully and unlawfully band themselves together to shoot and kill the said Francis Marion Smith, and in pursuance of said banding together as aforesaid said defendants did on said November 17, 1921, and in said county and state aforesaid, wrongfully, wantonly, unlawfully and maliciously, and not in their necessary or apparently necessary self-defense, shoot and wound said Francis Marion Smith with a gun loaded with leaden balls and other hard substance, and all of said defendants being then and there present, aiding and abetting each other in said shooting as aforesaid, and of the said shooting and said wounding the said Francis Marion Smith did then and there immediately die; and because of the acts of said defendants and injuries therein complained of plaintiffs have been damaged by the defendants in the sum of $20,000, no part of which has been paid.

The defendants, claiming to have been prohibition officers of the United States upon the occasion referred to in plaintiffs' petition, and then engaged in the discharge of their duties as such, and not otherwise, filed their petition for the removal of the case from the state court to this court, and upon a writ of certiorari issued here a transcript of the record has been filed. The plaintiffs have moved to remand the action to the state court, and that motion has been quite fully argued.

The basis of the claim to the right to remove the case is found in the act of Congress to amend section 33 of the act to codify, revise, and amend the laws relating to the judiciary, approved March 3,

⊕—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1911 (the Judicial Code), and which amended act was approved August 23, 1916 (39 Stat. 532 [Comp. St. § 1015]), and especially upon those clauses thereof which are as follows:

"Sec. 33. That when any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer and affects the validity of any such revenue law, or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer, or when any civil suit or criminal prosecution is commenced against any person for or on account of anything done by him while an officer of either house of Congress in the discharge of his official duty in executing any order of such house, the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the District Court next to be holden in the district where the same is pending upon the petition of such defendant to said district court and in the following manner: Said petition shall set forth the nature of the suit or prosecution and be verified by affidavit and, together with a certificate signed by an attorney or counselor at law of some court of record of the state where such suit or prosecution is commenced or of the United States stating that, as counsel for the petitioner, he has examined the proceedings against him and carefully inquired into all the matters set forth in the petition, and that he believes them to be true, shall be presented to the said District Court, if in session, or if it be not, to the clerk thereof at his office, and shall be filed in said office."

Obviously the language of this act does not, in terms, include "prohibition laws," but it is insisted that the act should be so construed as also to include them as well as "revenue laws" and "officers of the court" as being within the objects and purposes of the enactment. This suggests the general inquiry: Can the court, in an effort to interpret the statute as enacted by Congress, treat it as containing language which Congress did not put into it, and all to the end that a case like this should be removable, despite the omission, upon the ground that it should be treated as within the reason and spirit of the enactment, even if not mentioned, or, conversely, must the court decline to do that upon the ground that such a course would be adding to the legislation enacted by Congress instead of construing it?

[1] We might, if at all essential, go elaborately into the authorities bearing more or less directly upon each of those propositions. But it seems altogether unnecessary to do so, and we shall content ourselves with a more concentrated effort to make clear our conclusions and our reasons therefor. Cooley, in his work on Constitutional Limitations (chapter 5, pp. 108, 109), quotes from the opinion of the Supreme Court in Wayman v. Southard, 10 Wheaton, 46, 6 L. Ed. 253, wherein Chief Justice Marshall, speaking for the court, had said:

"The difference between the departments undoubtedly is that the Legislature makes, the executive executes, and the judiciary construes the laws."

And the author then comes to a conclusion expressed in this language:

"It is the province of judges to determine what is the law upon existing cases. In fine, the law is *applied* by the one, and *made* by the other."

Innumerable cases might be cited in support of these fundamental principles. We think we cannot be mistaken in the general proposition that, in construing the statutes enacted by Congress, the courts cannot and should not make any material additions to the language used by the legislative department, even though they should think that any such addition might be an improvement or meet conditions which could have been, but in fact are not, within the purview of what was actually done by Congress. If the courts should assume the power, under the guise of construction, to add words to a statute, there might be few limits at which they would ultimately pause in the great conflict which might ensue between the legislative and the judicial departments of our government. The writer of this opinion has had divers opportunities to attempt that course, but has always declined (several times, indeed, very recently) to depart from his profound conviction that the courts, when necessary, should construe, but should never add to, legislation enacted by Congress—the latter course, in his view, being entirely beyond the limitations of judicial rights or power as fixed by the Constitution.

[2] In this instance we are confronted with the insistent demand that we shall construe into section 33 of the Judicial Code as amended by the act of 1916 the words "prohibition laws," because it is said those laws are within the spirit of section 33 of the Judicial Code, and should therefore be construed as if actually embraced therein, and that its meaning should be expended to meet a new situation, and to put prohibition officers upon the same footing as to protection in the discharge of their duties as would be "revenue officers" under the statute.

Since the prohibition laws went into effect, two of the District Courts have yielded to that insistence. This was done in State of Oregon v. Wood (D. C.) 268 Fed. 975, and afterwards in Morse v. Higgins (D. C.) 273 Fed. 832, in which the District Judge retracted his previous decision to the contrary. Undoubtedly those decisions are entitled to the utmost respect, but we have been unable to reach a similar conclusion, not only because of the general views we have already expressed, but upon other strong reasons, inasmuch as previous adjudications have clearly established the proposition that the incidental receipt of money by the government or its officers under the National Prohibition Act (41 Stat. 305) does not make it a "revenue law," within the meaning of such enactments as section 33 of the Judicial Code.

In the opinion of the Supreme Court, delivered by Mr. Justice Swayne in United States v. Norton, 91 U. S. at pages 568, 569, 23 L. Ed. 454, it was said:

"It is a matter of common knowledge that the appellative 'revenue laws' is never applied to the statutes involved in these classes of cases. The Constitution of the United States (article 1, § 7) provides that 'all bills for raising revenue shall originate in the House of Representatives.' The construction of this limitation is practically well settled by the uniform action of Congress. According to that construction, it 'has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which incidentally create revenue.' Story on the Const. § 880. 'Bills for raising revenue,' when enacted into laws, become 'revenue

laws.' Congress was a constitutional body sitting under the Constitution. It was, of course, familiar with the phrase 'bills for raising revenue,' as used in that instrument, and the construction which had been given to it. The precise question before us came under the consideration of Mr. Justice Story, in United States v. Mayo, 1 Gall. 396. He held that the phrase 'revenue laws,' as used in the act of 1804, meant such laws 'as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government.' The same doctrine was reaffirmed by that eminent judge in United States v. Cushman, 426. These views commend themselves to the approbation of our judgment."

It would seem to be clear that this language is altogether applicable to the situation presented here. Certainly the Eighteenth Amendment and the National Prohibition Act, made for its enforcement, were not designed for raising revenue, but for other clearly defined purposes. Together they abolished laws which had brought to the government hundreds of millions of dollars in revenue annually. True, some little revenue may come from penalties for violating those laws or otherwise, but that does not make them "revenue laws," within section 33 of the Code, inasmuch as any revenue derived from the Prohibition Law is merely incidental to the efforts made for its enforcement.

Other authorities add to the clarity of this view. In United States v. Mason, 218 U. S. at pages 529, 530, 31 Sup. Ct. 28, 33 (54 L. Ed. 1133), the Supreme Court, speaking through Mr. Justice Hughes, said:

"In United States v. Hill, 123 U. S. 681, the action was on the official bond of the clerk of the District Court of the United States for the District of Massachusetts, and it was asserted that this court had jurisdiction to review the judgment, because the suit was brought for the enforcement of a 'revenue law.' The court held that section 844 of the Revised Statutes, requiring the clerk to pay into the treasury any surplus of fees and emoluments shown by his return, was not a revenue law within the meaning of section 699, and in delivering the opinion of the court Chief Justice Waite said: 'Certainly it will not be claimed that the clerk of a District Court of the United States is an "officer of the revenue," but there is nothing to indicate that the term "revenue" has any different signification in this subdivision of the section from that which it has in the other. The clerk of a court of the United States collects his taxable "compensation," not as the revenue of the United States, but as the fees and emoluments of his office, with an obligation on his part to account to the United States for all he gets over a certain sum which is fixed by law. This obligation does not grow out of any "revenue law," properly so called, but out of a statute governing an officer of a court of the United States.' "

Another very instructive opinion is that of the Circuit Court in Twin Falls Canal Co. v. Foote (C. C.) 192 Fed. 583, where, at pages 585, 586, it was said:

"It was recognized that in executing plans for the irrigation of much of the public arid land individual effort would be inadequate, and that the government with its unlimited credit could undertake and successfully carry to completion projects which, because of their magnitude and difficulties, private enterprise would hesitate to undertake. The government was neither to gain nor to lose by the enterprise, for in theory the entire cost of any given project is to be reimbursed by those who enter irrigable lands thereunder. It is clear that, in so far as it is a feature at all, revenue is an incident only, and not the primary purpose of the act, and it therefore follows that the act does not fall within the terms of section 7 of article 1 of the Constitution of the United States, providing that 'all bills for raising revenue shall originate in the House

of Representatives.' 'Bills for raising revenue,' it is generally thought, are such as 'levy taxes in the strict sense of the word'; and the constitutional limitation 'has not been understood to extend to bills for other purposes, which may incidentally create revenue.' Story on the Constitution, § 880; United States v. Norton, 91 U. S. 566, 23 L. Ed. 454; Twin City Bank v. Nebeker, 167 U. S. 196, 17 Sup. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202 U. S. 429, 26 Sup. Ct. 674, 50 L. Ed. 1090."

The cases last cited obviously support the conclusion there reached, as well as the general proposition involved here. In this situation we are of opinion that the National Prohibition Act is not a "revenue law," within the meaning of section 33 of the Judicial Code, and that "prohibition officers" are not "revenue officers."

Certainly this may or may not be a regrettable situation, but it results altogether from the fact that Congress has not so far seen fit to make laws to meet the situation of prohibition officers, whose duties sometimes involve great danger and serious litigation. Apparently Congress alone can change this so far as the removal of cases from the state courts may be concerned. It may not be amiss to add that in its opinion in Dodd v. Louisville Bridge Co. (C. C.) 130 Fed. at page 198, this court found it well to say:

"To say the very best in behalf of the P., C., C. & St. L. Ry. Co., there is much doubt about the right of removal in this case. The general rule is that jurisdiction on removal must be clear, in order to justify the federal court in assuming cognizance of the case. Unless it is, in the legal sense, fairly clear, the case should be remanded. Johnson v. Wells, Fargo & Co. (C. C.) 91 Fed. 4; Fitzgerald v. Railroad Co. (C. C.) 45 Fed. 812; Hutcheson v. Bigbee (C. C.) 56 Fed. 327; Coal Co. v. Haley (C. C.) 76 Fed. 882."

This language may be applicable here, in view of possible doubts and differences of opinion as to the removability of the case we are considering.

It results that the plaintiffs' motion to remand this action to the Nelson circuit court should be and it is sustained.

## Supplemental Opinion.

[3] After the announcement of our opinion on May 31st, we were asked to hear a reargument. This request was readily granted. The reargument was based by defendants' counsel upon propositions radically different from those urged at the first hearing. To such an extent was this true that the court suggested the filing of an additional statement of the grounds upon which the removal was sought to be sustained. This was done, and in it the defendants alleged, first, that at the time Francis Marion Smith was killed they were engaged in the performance of their official duties as agents and appointees of the Commissioner of Internal Revenue; second, that they were designated and commonly known and referred to as Federal Prohibition Agents; third, that at that time they were engaged in the enforcement of the National Prohibition Act, and in the attempted suppression of the unlawful manufacture of intoxicating liquors in Nelson county, Ky.; and, fourth, that defendants were all duly appointed and commissioned as such agents by the Commissioner of Internal Revenue, whose name is signed to the commissions of the several defend-

ants and countersigned by the Prohibition Commissioner—the commission of each of the defendants being in this form, viz.:

"This certifies that ―――― is duly employed as a Head, Prohibition Field Force (Ky.), and is hereby authorized to execute and perform all the duties delegated to such officers by law."

The blank in this form of certificate was, in this instance, filled with the name of one or the other of the defendants, and signed and countersigned as above stated, with a note making the certificate void if the photograph of the person named in it is not placed at its head. This plainly shows they were prohibition agents or officers—nothing more nor less.

[4] Support of the contentions now urged by the defendants is based upon the provisions of section 28 of the National Prohibition Act, which are as follows:

"The Commissioner, his assistants, agents, and inspectors, and all other officers of the United States, whose duty it is to enforce criminal laws, shall have all the power and protection in the enforcement of this act or any provisions thereof which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States."

We are not advised of any case in which there has been a judicial interpretation of this section, but it will readily be noticed that the right to "remove an action" is in no way mentioned nor in terms referred to therein, though it is now urged that we should give to it all the effect it would have if such omission had not occurred.

It will, of course, be recalled that section 33 of the Judicial Code in explicit terms authorizes the "removal" to the federal courts of certain described actions lawfully brought in state courts of competent jurisdiction. The "right to remove" such suits is given by that section, first, to "revenue officers"; second, to "officers of the court"; and, third, to "the marshal of the court and his deputies." In short, section 33 gives those officers, but no others, the right to remove from the courts of original jurisdiction to the federal courts suits brought against them of the character therein defined, and this is the only phase of it with which we are now concerned, having, in our former opinion, shown that "prohibition agents or officers" are not "revenue officers or agents." In this situation the question suggests itself whether Congress has, in clear and definite terms, extended to officers, other than those expressly named, the right to remove a case. If Congress had intended to give this right under the Prohibition Act, it was perfectly easy for it to say so in language so plain and clear as to stand in no need of construction.

Instead of doing that, section 28 of the Prohibition Act, copied above, only provides that various officers shall have the same "power and protection in the enforcement of that act or any provision thereof as is conferred by law for the enforcement of existing laws relating," first, "to the manufacture," and, second, to "the sale of intoxicating liquors under the law of the United States." From this statement it would seem clear that we must ascertain what powers and protection had theretofore been "conferred by law for the enforcement of exist-

ing laws" relating to the subject mentioned, and further along we shall endeavor to do so.

In their original petition for the removal of the case to this court, defendants had stated that each of them was a duly appointed and qualified federal prohibition officer of the United States for the state of Kentucky, that all of them acted under and by authority of the National Prohibition Act, and, argumentatively, that they acted under the authority of the internal revenue laws (38 Stat. 745). They also stated that on November 17, 1921, under orders of the Federal Prohibition Director for the state of Kentucky, they proceeded to Nelson county, Ky., where they were engaged in the performance of their official duties in an effort to suppress the violation of "liquor laws" and to arrest those guilty of such violations; that while so engaged in the performance of their official duties, in close proximity to where a moonshine distillery was located, they and other officers associated with them on that occasion were fired upon by the men who were engaged in the violation of the Prohibition Act and certain sections of the Revised Statutes of the United States "in the setting up and operation of the distillery"; that in order to protect themselves from an attack by those persons after they had been fired upon, as stated, "certain of the officers named" returned the fire; and that in the exchange of shots it was afterwards learned that Francis Marion Smith, husband of the plaintiff, Lucy Smith, and the father of her coplaintiffs, was shot and killed.

It may, at the outset, be most suggestive and important to note that neither in the original petition of the defendants nor in the statement filed later was it, in any affirmative way, stated or adequately shown that the presumptively innocent Francis Marion Smith was himself to any extent "engaged" either in the "manufacture or sale of intoxicating liquor," within the meaning of that phrase as used in section 28, of the National Prohibition Act. Furthermore, it is most important to note that no case to which that phrase is not applicable can by any means be brought within section 28 of the act. Nevertheless it has been earnestly and ably contended that in cases like this a liberal construction of section 28 of the act and of section 33 of the Judicial Code is demanded, and would lead to a different conclusion.

The opinion in which we endeavored to dispose of the question of the removal of this action as it was then presented was to the effect that this case did not come within section 33 of the Judicial Code. Now, however, it is contended for the defendants that, properly construed, section 28 of the National Prohibition Act, per se, brings this case within section 33. The questions thus raised are interesting, and have been given industrious consideration. Section 28 (copied above), when analyzed, is found to provide (1) that certain officers specified or described therein (2) shall have the "power" (3) and "protection" (4) in the enforcement of this act or any provision thereof (5) which is conferred by law for the enforcement of existing laws (6) relating to the manufacture or sale of intoxicating liquors under the law of the United States. Obviously nothing is expressly said in section 28, either in respect to an amendment of section 33 of the Judicial Code

or in respect to the right of a defendant to remove an action from a state to a federal court. This latter right, if it can be sustained at all, must, in the absence of express provisions, depend upon mere inference or construction, and the ascertainment thereby of the intention and purpose of Congress when separately enacting each of those sections. Though, as we have seen, Congress did not in any way in section 28 of the National Prohibition Act mention either section 33 of the Judicial Code or the right to remove an action from a state to a federal court, it is nevertheless earnestly argued that the word "protection," in section 28, must be so construed as to include a right to remove cases like this.

[5] In order to treat this very important question adequately, we have done two things: First, we have attempted a thorough analysis of the body of the then existing internal revenue laws; and, second, we have attempted to obtain a history of the times when efforts were being made to prepare and enact such laws as might be deemed proper to enforce the Eighteenth Amendment to the Constitution, inasmuch as that history, including discussions and explanations before Congressional committees having it under consideration, might be helpfully instructive. This might include explanations of what was proposed in bills introduced in ether house of Congress. In reference to section 28, this might give assistance, and especially if arguments or explanations were made by those engaged in helping to prepare and urge the enactment of the legislation, as was done by the Anti-Saloon League of America and other kindred organizations and their counsel, chief among whom, as the reports show, was Mr. Wayne B. Wheeler. This is entirely admissible, because many decisions have held that, where statutes are ambiguous or otherwise of doubtful meaning, it is admissible to seek information from the history of the time when the legislation was in preparation for enactment.

In United States v. Union Pacific Railroad Co., 91 U. S. 79, 23 L. Ed. 224, the Supreme Court said:

"In construing an act of Congress, we are not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against its passage. The act itself speaks the will of Congress, and this is to be ascertained from the language used. But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it. Aldridge v. Williams, 3 How. 24; Preston v. Browder, 1 Wheat. 120."

Previous laws of the United States and any "protection" afforded by them may thus become important. No attempt was made at the reargument to point out any specific provisions of then "existing laws" which related to "the manufacture or sale of intoxicating liquors," and we are yet confronted with the question of the extent, if any, to which the courts may properly go in any case where Congress has not actually expressed itself upon a proposition contended for in argument. Can the courts then supply, by mere construction, any real or supposed omission?

In order that we might ascertain what "power and protection" has been conferred upon revenue officers by Congress "in the enforce-

ment of existing laws relating to the manufacture or sale of intoxicating liquors" within the purview of section 28 of the National Prohibition Act we were altogether willing to search out such provisions and to give to the defendants the full benefit thereof. With this end in view we have examined the statutes in relation to internal revenue, as compiled in volume 6, Comp. Stats. (1916), pp. 6892 to 7407, and in volume 1 of the Supplement to that compilation, pages 1176 to 1305, inclusive.

In title 35 of volume 6, page 6891, we find the beginning of that compilation. Chapter 1 of this title relates to officers of internal revenue, but in it we find nothing bearing upon the question before us.

Chapter 2 relates to assessments and collections. In this chapter, section 3177, R. S. (section 5900, Comp. Stats.), authorizes internal revenue officers "to enter upon premises" where taxable articles are kept. Any forcible resistance thereto is made an offense and a penalty is prescribed. In the same chapter is found section 3179, R. S. (section 5901, Comp. Stats.), declaring to be criminal the making of any false return to a collector and prescribing a penalty therefor.

Section 3187, R. S. (section 5909, Comp. Stats.), provides that taxes may be collected by distraint. Section 3205, R. S. (section 5927, Comp. Stats.), provides for repeated seizures, if one is not sufficient. Section 3244, R. S. (section 5971, Comp. Stats.), relates to special taxes on brewers, rectifiers of distilled spirits, retailers, wholesale dealers, and manufacturers of wooden stills.

Section 5973, Compiled Statutes, prescribes taxation on retail and wholesale liquor dealers. Section 5974, Comp. Stats. (28 Stat. 567), has provisions as to certain privileges of distillers who have given bond, etc., and section 5975, Comp. Stats., provides for an exemption for vintners. Section 5976, Comp. Stats., has reference to special stamps, under certain circumstances, on railroad trains.

Chapter 4 of the title contains many important sections relating to distilled spirits and wines, which, however, can have no possible reference to the question we are now trying to investigate, but others we shall now mention may have such bearing. Section 3247, R. S. (section 5981, Comp. Stats.), defines who are distillers, and the next succeeding section (3248, R. S. [Comp. St. § 5982]) defines distilled spirits. The latter, it may be remarked, are no doubt "intoxicating liquors," though not so called.

Sections 3256 and 3257, R. S. (Comp. Stats. §§ 5992 and 5993), prescribe the punishment for fraudulent distillers and tax evaders. Section 3276, R. S. (section 6016, Comp. Stats.), is very important, inasmuch as it makes it lawful for revenue officers at all times to enter distillery premises, to examine and gauge distilled spirits, and, when any such officer is hindered or obstructed, it provides that the distiller shall forfeit $1,000, and a like forfeiture is incurred if the distiller refuses the demand of such officers for admission, and in such contingencies the officer is authorized to break into the distillery by force, either through its windows, walls or otherwise.

Section 3277, R. S. (section 6017, Comp. Stats.), requires distillers to furnish strong, safe, and convenient ladders to enable such officers

to examine and gauge such distilled spirits, and the distiller is required at all times to keep lights and open doors under the control of the officers, and the punishment for violations of this section is prescribed. Sections 3278 and 3279, R. S. (Comp. Stats. §§ 6018 and 6019), authorize the breaking up and into the ground on the premises, and requires distillers to put conspicuous signs on the premises in a specified way. Under sections 3280 and 3281, R. S. (Comp. Stats. §§ 6020 and 6021), all persons are forbidden to carry on business until the law is complied with and a bond given.

Section 3166, R. S. (section 5886, Comp. Stats.), provides that the Commissioner of Internal Revenue may authorize any officer of internal revenue to seize any property which by law may be subject to seizure, and for that purpose such officer shall have all the power conferred by law upon collectors, and such special authority shall be limited in respect of time, place, and kind and class of property as the Commissioner shall specify. Section 3200, R. S. (section 5922, Comp. Stats.), authorizes a collector or deputy collector of internal revenue to seize and sell the lands of persons who owe internal revenue taxes under the terms specified in the statute.

Sections 3288 and 3289, R. S. (sections 6029 and 6030, Comp. Stats.), make it unlawful for tax-paid whisky to remain on the distillery premises, and forfeits to the United States all distilled spirits found in casks or packages of five gallons or more without having the marks and stamps thereon required by law. Section 3453, R. S. (Comp. Stats. § 6355), authorizes the seizure of property found in possession in fraud of revenue laws. The section goes into details of the circumstances under which such seizures may be made.

Section 3460, R. S. (section 6362, Comp. Stats.), regulates the proceedings to be had after the seizure of goods or property, if valued at $500 or less. Section 3462, R. S. (section 6364, Comp. Stats.), authorizes the several District Judges to issue search warrants authorizing internal revenue officers to search any premises upon proper oath being made by the officer applying for the warrant.

Title 35 and the various sections above referred to as being in volume 6, Compiled Statutes, together with sundry amendments thereof and decisions thereon, are also embodied in volume 1 of the Supplement to the Compiled Statutes, pages 1176 to 1395. These likewise have been examined in our search for any provision of the internal revenue laws which might support the claim to a right to "remove" this action from the court of original jurisdiction to this court under section 28 of the National Prohibition Act.

With these statutes before us, we have sought to ascertain what "power and protection" in the enforcement of that act had been given by section 28, which, in express terms, had provided that it should be the same as that "conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States," inasmuch as that seemed clearly to be its full scope, and, limiting our efforts to those "then existing laws," our analysis of them seems clearly to show what "power and protec-

tion" were in the mind of Congress when it enacted the statute to enforce the Eighteenth Amendment.

In short, internal revenue officers under those laws were authorized and empowered—

(1) To enter at all times upon the premises of a distiller, and, if demand for admission was refused, to break into such premises or a distillery thereon (section 3177, R. S.), and if they were hindered or obstructed in this fines were imposed.

(2) To collect taxes by distraint, and, if needful, to make repeated seizures of property (section 3187, R. S.).

(3) To break into any distillery by force if refused admission thereto (section 3276, R. S.).

(4) To break up and into the ground on the premises where any distillery was located (section 3277, R. S.).

(5) To make seizures of property under sections 3166, 3200, 3453, and 3460, R. S. (sections 5886, 5922, 6355, and 6362, Comp. Stats.); and

(6) District Judges were authorized to issue search warrants.

We have in this painstaking way gone into these features of "then existing laws" because of the novelty as well as the importance of the questions involved, and find that, while the National Prohibition Act has throughout made elaborate provision for the drastic enforcement of its own requirements, including the unusual powers given prohibition officers and agents in respect to seizures and destruction of property and otherwise, these provisions are not important here, as they are new, and no one of them confers the right to remove a case from a state to a federal court.

It seems, therefore, to be clear that the legal authority and "power," and the therefrom resulting "protection," thus given by pre-existing law were what Congress had in mind when it enacted section 28. If anything else, including any removal of cases, had been intended, a clause to that effect would have been inserted, for, obviously, the "protection" resulting from the provisions of the Revised Statutes is clearly and certainly available in all courts, state and federal alike, without any removal from one to another, inasmuch as such statutes are the supreme law of the land upon the subject.

### History of the Prohibition Laws.

The War Prohibition Act was passed by the Sixty-Fifth Congress and approved November 21, 1918. 40 Stat. 1046 (Comp. St. Ann. Supp. 1919, §§ 3115$^{11}$/₁₂f–3115$^{11}$/₁₂h). Its provisions in respect to prohibition are practically all contained in the fourth clause of section 1, though its second section briefly authorizes certain rules and regulations respecting distilled spirits. Otherwise the provisions of that act have a very wide range, but none of them seem to throw any light on the question involved in this case. The same may be said of an act supplemental to the National Prohibition Act, approved November 23, 1921. 42 Stat. 222. The only prohibition legislation affecting the question here involved is the National Prohibition Act it-

self, which was enacted by the Sixty-Sixth Congress and passed over the objections of the President October 28, 1919. 41 Stat. 305.

In this situation what light does the history of the times, when legislation was in contemplation after the ratification of the Eighteenth Amendment, but before its consideration by either house of Congress, throw upon the question now principally claiming our attention? Among other things it shows that there was much discussion before the Judiciary Committee of the House of Representatives and also that of the Senate during the preparatory stages of necessary legislation, and when, as we have seen, its chief promoter before each of those committees was the Anti-Saloon League of America, assisted by anti-saloon leagues of many separate states; the chief counsel and adviser of all being the Mr. Wheeler we have mentioned, and who, as that history popularly shows, may fairly be credited with the authorship of much of the National Prohibition Act as originally introduced in the House of Representatives and in a somewhat special sense of its twenty-eighth section.

Indeed, in examining the hearings before those committees, we can find no reference to that section, except a statement by Mr. Wheeler in one of his addresses, made long before either committee reported the bill, and who then used this plain language, viz.:

"This section gives the Commissioner and his deputies all the power conferred upon revenue officers and other officers of the law in apprehending law violators. Experience shows that these officers, in enforcing the laws against illicit liquor dealers, must have special powers conferred upon them. Congress has enacted several laws for this purpose. This section gives the officers whose duty it is to enforce this act all the power and protection which other officers have in enforcing similar laws. These officers will have to act quickly in some places. They may not have the active support of local officers, and they cannot wait to find some regular officer who will act. If they do, the law violator will escape. There should be no doubt about their having as much power as other officers. There is good reason why they should have more power."

This very explicitly shows what was then being advocated, but which in no wise related to the "removal of cases." Power, and more power, was what was sought. Some months afterwards the Judiciary Committee of the House on June 30, 1919, made its report favoring the enactment of the proposed legislation; but in it we can find no allusion to section 28, nor any of its provisions. The same may be said of the report on the same legislation made by the Judiciary Committee of the Senate on August 15, 1919. Indeed, section 28 of the act does not seem to have been mentioned in the text of either of those reports. Is it not fair to infer that each committee agreed with what had been urged by the propounders of the legislation in which no need for removals was suggested? Power and authority were thus asked and given, but nothing was included which in any way indicated an intention to provide for the "removal of actions," nor for any amendment of section 33 of the Judicial Code. It would, we think, be fair to say that a conclusion that there was such intention would be forced and inadmissible, if not extravagant. To do as urged on behalf of the defendants would indeed be legislation, and not an interpretation of legislation already in force and not amendable by the courts.

[6] While the removal of a case should always be made if authorized by law, a removal which is not so authorized should always be refused and the previously acquired jurisdiction of the state court respected.

[7] The laws of the United States are supreme. They reach and "protect" citizens in the state courts as fully as they could here, whether the plea therein be self-defense (apparently applicable here), or one based upon conduct made lawful by some statute of the United States or of Kentucky.

Here, however, the question presented is not on the merits of the controversy, but is one of jurisdiction only. That was first acquired by the state court, and cannot be taken from it, unless clearly authorized by some law of the United States. None has been found, and we have concluded that Congress did not give, nor intend to give, the power or right of removal in cases like this, and the motion to reconsider and set aside the order of May 31, 1922, is denied and overruled.