## PEOPLE OF STATE OF ILLINOIS v. MOODY.

## PEOPLE OF STATE OF ILLINOIS v. ASHER et al. (three cases).

(District Court, S. D. Illinois, N. D.' November 5, 1925.)

Nos. 3986-313 to 3986-316.

**1. Removal of causes ⬥➝107(4)—Ordinarily question of jurisdiction cannot be raised on mere motion to remand.**

Ordinarily question of jurisdiction cannot be raised on mere motion to remand.

**2. Removal of causes ⬥➝22—Federal prohibition agents held entitled to remove prosecution to federal court.**

Under National Prohibition Act, § 28 (Comp. St. Ann. Supp. 1923, § 10138½o), federal prohibition agents were granted all power and protection afforded to revenue officers, and are therefore entitled under Judicial Code,. § 33 (Comp. St. § 1015), to removal from state to federal court of prosecution for acts performed under color of their office.

**3. Removal of causes ⬥➝22—Deputy United States marshal is "officer of court," entitled to removal of prosecution to federal court.**

Under Judicial Code, § 33 (Comp. St. § 1015), and Rev. St. § 780 (Comp. St. § 1304), deputy United States marshal is "officer of court," entitled to removal of prosecution from state to federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second .Series, Officer of Court.]

Criminal prosecutions by the People of the State of Illinois against Walter Moody and against J. E. Asher and others. On motions to remand to state court. Motions denied.

Henry E. Pratt, State's Atty., of Peoria County, of Peoria, Ill., for plaintiff.

Thomas Williamson, U. S. Atty., of Springfield, Ill., for defendants.

FITZHENRY, District Judge. The September grand jury of the circuit court of Peoria county returned the indictments here involved. Defendant Walter Moody is a deputy United States marshal in the Southern district of Illinois. The other two defendants were federal prohibition agents, appointed and acting under and by virtue of the provisions of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). On the 2nd day of October, 1925, defendants filed their petitions, reciting the indictments in the state court, and averring, at the several times in question they were in and about the performance of their official duties, one as deputy United States

marshal serving process, and the others aiding in the service of the process and in the performance of their official duties in and about the enforcement of the prohibition law, and asking that the causes be removed from the Illinois circuit court to the United States District Court. Upon a consideration of these petitions, the court granted the writ of habeas corpus cum causa in each of the cases. The clerk of the Peoria county circuit court complied with the writ, and transmitted to the clerk of this court certified copies of the several indictments in the causes. All of the defendants appeared and gave bond in this court, in the said several sums fixed by the circuit court of Peoria county, for their appearance in this court. No appearance was entered by the state's attorney in the proceedings to remove the causes, but on last Saturday, October 31st, he appeared in court and in each of the criminal proceedings, Nos. 313, 314, 315, and 316, entered his motion to remand the cause to the circuit court of Peoria county. After appearing and furnishing capias bail by defendant Asher and prior to the motion of the state to remand, the death of defendant Asher was suggested and the cause abated as to him.

The chief reasons assigned by the state's attorney of Peoria county upon which he bases his motions to remand, are as follows:

(1) That the United States District Court has no jurisdiction in the premises.

(2) That the petitions for the writs of habeas corpus cum causa were insufficient and informal.

(3) That the defendants in these cases are not within any of the classes of persons referred to in section 33 of the Judicial Code (Comp. St. § 1015).

(4) That defendant Moody was not in the performance of his duty as a deputy United States marshal at the time of the commission of the alleged offenses.

(5) That defendant Hartzig is merely a federal prohibition agent, and does not come within the provisions of the statute authorizing civil or criminal proceedings instituted in state courts against them, to be removed to the United States courts.

All other reasons were eliminated in the argument at the bar.

[1] Ordinarily, the question of jurisdiction cannot be raised upon a mere motion to remand. Carlisle v. Sunset Telephone & Telegraph Co. (C. C.) 116 F. 896. However, as such motion is in effect a demurrer to the petition for removal, the court is disposed to give the matter of jurisdiction consideration.

The state does not contend that section 33 of the Judicial Code is unconstitutional, nor can it do so, inasmuch as the United States Supreme Court held it valid many years ago. Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648.

[2] The only serious question presented is as to whether or not the defendants in the criminal cases are persons coming within the classes of persons granted the right of removal in cases of this character. All proceedings in this court involving the indictments herein are predicated upon section 33 of the Judicial Code of the United States, which provides, in so far as material here, the following:

"When any * * * criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States * * * on account of any act done under color of his office or of any such law, * * * and effects the validity of any such revenue law, or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer, * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court. * * *

"The cause shall thereupon be entered on the docket of the District Court and shall proceed as a cause originally commenced in that court. * * * When it is commenced by capias or by any other similar form of proceeding by which a personal arrest is ordered, he shall issue a writ of habeas corpus cum causa, a duplicate of which shall be delivered to the clerk of the state court * * * by the marshal of the district or his deputy; * * * and thereupon it shall be the duty of the state court to stay all further proceedings in the cause, * * * and any further proceedings, trial, or judgment therein in the state court shall be void."

It will be observed that, when a defendant by appropriate petition brings himself within the provisions of this statute, practically no discretion remains in either the United States court or the state court with reference to the further disposition of the case in question. In such circumstances it becomes the duty of the United States court

to act, and it is expressly provided that any further proceedings, trial, or judgment in the state court shall be void.

Section 33, supra, here involved, grew out of the nullification statute when South Carolina attempted to make it unlawful for revenue officers to collect revenue under a famous tariff act. The state contended it had the right to nullify the tariff law, and attempted to do so by legislation. In the many years that followed, its application became frequent, and it has been amended several times, only, however, by increasing the classes of persons embraced within its provisions. The latest amendment was in 1916, when the provision, "or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer," was added.

It is contended very earnestly on behalf of the state, of Illinois that, because defendant Hartzig is a federal prohibition agent, appointed and acting under the National Prohibition Act, therefore he is not such a revenue officer as is contemplated in section 33 aforesaid. The state relies principally upon two District Court decisions. Smith v. Gilliam (D. C. Ky.) 282 F. 628, and Wolkin v. Gibney (D. C.) 3 F.(2d) 960. In Smith v. Gilliam, which was an exhaustive opinion remanding a murder case to the state courts of Kentucky, the defendants were prohibition agents. The question as to whether the National Prohibition Law was a revenue law within the meaning of section 33 was presented, but the petitioning defendants contended it made no difference whether the National Prohibition Act was a revenue law, or not, for the reason that section 28 of the National Prohibition Act gave them (the defendants there) all of the power of protection of revenue officers. Section 28 is as follows:

"The commissioner, his assistants, agents, and inspectors, and all other officers of the United States, whose duty it is to enforce criminal laws, shall have all the power and protection in the enforcement of this act or any provisions thereof which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States." Comp. St. Ann. Supp. 1923, § 10138½o.

Because the statute just referred to did not contain some special provision showing an affirmative intent on the part of Congress to embrace the right of removal, the District Court there held that section 28 did not apply, and that the cases had been improperly removed and therefore should be remanded. The learned judge who wrote the opinion made an elaborate investigation of the "law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States," and set out in the opinion a digest of all of the statutes conferring power and protection to revenue agents and officers. All of these various provisions of the law were referred to except section 33 of the Judicial Code.

In South Carolina revenue collectors and agents had been arrested upon criminal charges for attempting to collect customs taxes, and it seems clear to this court that the original conception of the statute was to furnish protection against possible unwarranted criminal prosecutions in the state courts, and was in its nature the very essence of protection to those engaged in that service at that time. There are many cases in the books where the rights given to revenue officers under section 33 have been invoked as a protection to them in the performance of their duties in many of the jurisdictions of the United States.

In Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648, the defendant there was indicted in the state court for murder. A petition was filed in the United States Circuit Court, asking that the cause be removed for trial. The sitting judges of the Circuit Court were not in agreement upon the power of the Circuit Court to remove the murder case from the state court to the federal court, and submitted that question to the United States Supreme Court. The Supreme Court in that case answered the question of the Circuit Court as to the power of removal in the affirmative, and held that the Circuit Court did have the power. The Supreme Court, in passing upon the question, said:

"A more important question can hardly be imagined. Upon its answer may depend the possibility of the general government's preserving its own existence. As was said in Martin v. Hunter, 1 Wheat. 363, 'The general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers.' It can act only through its officers and agents, and they must act within the states. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a state court, for an alleged offense against the law of the state,

yet warranted by the federal authority they possess, and if the general government is powerless to interfere at once for their protection, if their protection must be left to the action of the state court, the operations of the general government may at any time be arrested at the will of one of its members. The legislation of a state may be unfriendly. It may affix penalties to acts done under the immediate direction of the national government, and in obedience to its laws. It may deny the authority conferred by these laws. The state court may administer, not only the laws of the state, but equally federal law, in such a manner as to paralyze the operations of the government. And even if, after trial and final judgment in the state court, the case can be brought into the United States court for review, the officer is withdrawn from the discharge of his duty during the pendency of the prosecution, and the exercise of acknowledged federal power arrested."

It will thus be seen from this discussion that the statute which is now known as section 33 of the Judicial Code is in its essence a measure of protection—protection to not only the government itself, but to the officers and agents through which it acts. Section 33 was a part of the existing law at the date of the passage of section 28 of the National Prohibition Act. Until the passage of the National Prohibition Act or the War Prohibition Act (Comp. St. Ann. Supp. 1919, §§ 3115¹¹⁄₁₂f–3115¹¹⁄₁₂h), which it amended, all laws relating to the manufacture and sale of intoxicating liquors enacted by Congress were purely revenue laws, and their enforcement and the collection of the excise taxes were committed to the Bureau of Internal Revenue, and the law was administered by revenue collectors and agents; and in the course of the administration of these revenue laws there were many cases where revenue agents were attacked, and it was found necessary in self-defense to shoot to protect themselves. In many of these cases the local authorities instituted criminal proceedings against the revenue agents growing out of these unfortunate affairs. In some of the localities it was apparent there were hostile communities and public officers in sympathy with those who were violating the law, and whose criminal conduct brought about the unfortunate affairs upon which criminal prosecutions were predicated, and, as a matter of protection, the criminal cases were removed for trial to the federal court. This was the history that was before Congress at the time of the enactment of the National

Prohibition Law. I cannot agree with the learned court of the western district of Kentucky that it was not the clear intention and purpose of Congress to give to federal prohibition agents all of the protection in the performance of their duties that prior thereto had been given to revenue officers, and one of the many elements of protection given to those officers was the right to have criminal prosecutions, instituted against them in state courts while they were in and about the performance of their duties as federal prohibition agents, removed to the United States court for trial.

The other authority relied upon by the state is that of Wolkin v. Gibney, supra. In that case the learned judge who wrote the opinion bases his conclusions upon the case of Smith v. Gilliam, supra, and Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061. The latter case was cited as holding "the federal Prohibition Act is not a revenue act." In that case Justice McReynolds, who wrote the opinion for the court, simply held that the double penalty to be assessed by revenue collectors under certain circumstances was invalid because that particular tax was in truth and in fact a penalty.

By the Eighteenth Amendment to the Constitution, the Congress and the states were given concurrent power to enforce the provisions of the prohibition section of the amendment. It was within the power of the Congress to do so by any species of law it saw fit. If for reasons satisfactory to Congress it concluded to enact a revenue law that would enforce the provisions of the prohibition amendment, it was within the power of that body to do so, and in doing so, instead of providing for the enforcement of the law in the Department of Justice, it concluded to do so through the Treasury Department and the Bureau of Internal Revenue. The act expressly directs that the Commissioner of Internal Revenue and his assistants, agents, and inspectors shall investigate and report violations of the law to the United States attorney, who is charged with the duty of prosecuting offenders, etc. Section 35 (Comp. St. Ann. Supp. 1923, § 10138½v) recognizes as a part of the legislation all existing revenue laws, and at the same time repealed all existing laws to the extent of their inconsistency with the National Prohibition Act. Title 3 (section 10138¾ et seq.) is devoted almost entirely to tax and revenue matters upon liquor whose possession, sale, and use may be lawful. The law author-

izes the sale of intoxicating liquor for use upon the prescription of physicians. Of course the purpose of the National Prohibition Law is to prevent as far as possible the manufacture and sale of intoxicating liquors for use as a beverage, but at the same time taxes the legitimate manufacture and use of intoxicating liquors. The taxing features of the National Prohibition Act and the existing law which is made a part of it by reference may be only incidental, and yet that fact of itself would not have the effect to change its character from that of a revenue law.

This same contention was urged upon the United States Supreme Court in United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493, as a reason why the Harrison Narcotic Drug Act (Act December 17, 1914, c. 1, 38 Stat. 785 [U. S. Comp. Stat. § 6287g]) should be declared unconstitutional by it. It was there contended that the narcotic business might properly be regulated by the states in the exercise of their police powers, and that the states had never delegated that power to the federal government. It is admitted by everybody that the revenue features of the Harrison Narcotic Drug Act are but incidental to the real purpose of the act. Yet the Supreme Court held: "The act may not be declared unconstitutional because its effect may accomplish another purpose as well as the raising of revenue. If the legislation is within the taxing authority of Congress, that is sufficient to sustain it." And yet the validity of that act could only be sustained upon the theory that it was a revenue act.

As to the application of section 28, the District Court for the Southern District of New York followed the case of Smith v. Gilliam, supra, without comment.

The solution of the question as to whether the National Prohibition Act is a revenue act is unnecessary to the proper determination of the issues here raised, because, regardless of whether the prohibition law is a revenue law or not, those who are charged with its enforcement are granted all of the power and protection afforded revenue officers who were engaged in the enforcement of the liquor laws prior to the passage of the Prohibition Act by section 28.

[3] In all four of these cases it happens that the grand jury of Peoria county in the indictments joined Walter Moody, one of the deputy marshals of this district. As to him, the provisions of the law are very clear and positive, and I do not understand that coun-

sel for the state is seriously challenging his right to invoke the privilege of removal granted by section 33 to "any officer of the courts of the United States." A deputy marshal is so far an officer of the court that he is subject to removal by the court at pleasure. Rev. St. § 780; U. S. Comp. Stat. § 1304.

The petitions upon which these causes were removed are sufficient in form. State of Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648.

The several motions to remand will be denied.