KEEHN v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. July 18, 1924.)

No. 1721.

1. **United States ⬩35—Prohibition agent is not an "officer of the United States."**
    A prohibition agent, appointed by the commissioner of Internal Revenue, is not an "officer of the United States," within the meaning of article 2, § 2, of the Constitution.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

2. **Intoxicating liquors ⬩249—Search warrant may be issued to prohibition agent.**
    The provisions of Espionage Act, tit. 11, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f), relating to the officials to whom a search warrant may be issued, are enlarged by National Prohibition Act, tit. 2, § 1, subd. 7, par. 2 (Comp. St. Ann. Supp. 1923, § 10138½), providing that "any act authorized to be done by the Commissioner may be performed

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by any assistant or agent designated by him for that purpose," and by other provisions of the act and its amendment, and include the agents and assistants appointed by the Commissioner of Internal Revenue for the enforcement of the provisions of the act.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Criminal prosecution by the United States against William F. Keehn. Judgment of conviction, and defendant brings error. Affirmed.

Daniel T. Hagan, of Providence, R. I. (John J. Rosenfeld and Charles A. Kiernan, both of Providence, R. I., on the brief), for plaintiff in error.

Harold A. Andrews, Sp. Asst. U. S. Atty., of Providence, R. I. (Norman S. Case, U. S. Atty., of Providence, R. I., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The question in this case is whether, under the provisions of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), search warrants may be lawfully issued to and served by a federal prohibition agent. The material facts are as follows:

A criminal information was brought against Keehn, charging him with unlawful possession of intoxicating liquor fit for beverage purposes, in violation of the Prohibition Act. "At the opening of the trial and before any testimony was taken, the defendant moved that the search warrant be quashed and evidence obtained thereunder be suppressed, because it was issued in violation of section 7 of title 11 of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼g), in that it was directed 'to the United States marshal for the district of Rhode Island or any of his deputies or any federal prohibition agent or any civil officer of the United States duly authorized to enforce any law thereof,' and in fact was served by a prohibition agent who was not a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or a person duly authorized by the President of the United States." This motion was denied, and evidence obtained under the search warrant was admitted. To both rulings exceptions were duly taken, now assigned as errors.

Keehn was convicted and fined, and it is from this judgment of conviction that the present writ of error is prosecuted.

The search warrant in question was served by Francis W. Pollard, who made a return entitling himself "Federal Prohibition Agent." The return shows the seizure of a substantial quantity of whisky and other intoxicants, as well as containers. The record contains a stipulation that Pollard and all the other prohibition agents participating in this search and seizure were appointed and commissioned by the Commissioner of Internal Revenue.

Section 25, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. * * * No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel or boarding house."

Section 2 of this title of the act (Comp. St. Ann. Supp. 1923, § 10138½a) provides:

"Sec. 2. The Commissioner of Internal Revenue, *his* assistants, agents, and inspectors shall investigate and report violations of this act to the United States attorney for the district in which committed, who is hereby charged with the duty of prosecuting the offenders, subject to the direction of the Attorney General, as in the case of other offenses against the laws of the United States; and such Commissioner of Internal Revenue, *his* assistants, agents, and inspectors may swear out warrants before United States commissioners or other officers or courts authorized to issue the same for the apprehension of such offenders, and may, subject to the control of the said United States attorney, conduct the prosecution at the committing trial for the purpose of having the offenders held for the action of a grand jury. Section 1014 of the Revised Statutes of the United States is hereby made applicable in the enforcement of this act. Officers mentioned in said section 1014 are authorized to issue search warrants under the limitations provided in title XI of the act approved June 15, 1917 (Fortieth Statutes at Large, page 217 et seq.)."

Section 1014 of the Revised Statutes (Comp. St. § 1674) provides:

"Sec. 1014. For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or superior court, chief or first judge of common pleas, *mayor of a city, justice of the peace, or other magistrate*, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. * * *"

By this provision the officials by whom search warrants may be issued in the enforcement of the Prohibition Act are enlarged over those provided for in title 11, § 1, of the Espionage Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a).

In section 6 of title 11 of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f) it is provided:

"Sec. 6. If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds of

probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner."

It is apparent, from the above citations from the Prohibition Act and section 1014 of the Revised Statutes embodied therein, that the provisions of section 6 are enlarged so far as the officials there named are concerned who may issue search warrants in the enforcement of the Prohibition Act.

By section 38, title 2, of the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½y), it is provided:

"Sec. 38. The Commissioner of Internal Revenue and the Attorney General of the United States are hereby respectively authorized to appoint and employ such assistants, experts, clerks, 'and other employees in the District of Columbia or elsewhere, * * * as they may deem necessary for the enforcement of the provisions of this act. * * *"

The questions here presented are (1) whether a prohibition agent, appointed by the Commissioner of Internal Revenue for the enforcement of the provisions of the act, under section 38, is a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, within the meaning of section 6 of title 11 of the Espionage Act; or (2) if he is not such a civil officer, whether the provisions of section 6 relating to the officials *to whom* a search warrant may be issued, as well as those *by whom* it may be issued, have been enlarged by the provisions of the Prohibition Act to include agents appointed by the Commissioner of Internal Revenue under section 38 for the enforcement of the provisions of that act.

[1] It must be conceded that the prohibition agent in question would be an officer of the United States within the strict constitutional meaning of article 2, § 2, of the Constitution, had he been appointed by the Attorney General under the provisions of section 38, and as such be an official to whom a search warrant might be issued under the provisions of section 6 of title 11 of the Espionage Act. United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482. It must also be conceded that if section 38 of title 2 of the Prohibition Act contained a provision that the Commissioner, in making appointments under that section, should do so with the approval of the Secretary of the Treasury, and the prohibition agent in question had been appointed by the Commissioner with the approval of the Secretary of the Treasury, he would be a civil officer of the United States within the meaning of the Constitution and of section 6 of title 11 of the Espionage Act, to whom search warrants might be issued. United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; Price v. Abbott (C. C.) 17 Fed. 506. But section 38 of title 2 of the Prohibition Act contains no provision calling for the approval of the Secretary of the Treasury of such appointments by the Commissioner, and the only provisions in the Prohibition Act, which we have found, where the approval of the Secretary of the Treasury is called for, are in title 2, § 1 (7), being Comp. St. Ann. Supp. 1923, § 10138½, which authorizes the Commissioner to make regulations for carrying out the provisions of the act with the approval of the Secretary of the

Treasury, and title 2, § 35, par. 2, (Comp. St. Ann. Supp. 1923, § 10138½v),—neither of which, apparently, have any relation to the approval by the Secretary of the Treasury of appointments of agents made by the Commissioner. Whether this legislative omission arose through oversight or was intentional we are unable to say, but inasmuch as the prohibition agent in question was not appointed by the head of a department, or by the head of a bureau under a law calling for the approval of the department, we feel constrained to hold that he was not an officer of the United States, within the meaning of article 2, § 2, of the Constitution. United States v. Smith, 124 U. S. 525, 8 Sup. Ct. 595, 31 L. Ed. 534; United States v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463; Burnap v. United States, 252 U. S. 512, 40 Sup. Ct. 374, 64 L. Ed. 692.

[2] The remaining question is whether the provisions of section 6 of title 11 of the Espionage Act, relating to the officials to whom search warrants may be issued, have been enlarged by the provisions of the Prohibition Act to include agents appointed by the Commissioner of Internal Revenue under section 38 of title 2 to enforce the provisions of that act.

The Prohibition Act (title 2) contains the following provisions:

"Sec. 28. The Commissioner, his assistants, agents, and inspectors, and all other officers of the United States, whose duty it is to enforce criminal laws, shall have all the power and protection in the enforcement of this act or any provisions thereof which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States." Comp. St. Ann. Supp. 1923, § 10138½o.

"Sec. 26. When the Commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction," etc. Comp. St. Ann. Supp. 1923, § 10138½mm.

Section 1 (7), par. 2:

"Any act authorized to be done by the Commissioner may be performed by any assistant or agent designated by him for that purpose." Comp. St. Ann. Supp. 1923, § 10138½.

By an act supplemental to the National Prohibition Act (Act Nov. 23, 1921, 42 Stat. at Large, pp. 222, 223, 224 [Comp. St. Ann. Supp. 1923, § 10184a]) it is provided:

"Sec. 6. That any officer, agent, or employee of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling, without a warrant directing such search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor and upon conviction thereof shall be fined for a first offense not more than $1,000, and for a subsequent offense not more than $1,000 or imprisoned not more than one year, or both such fine and imprisonment."

It thus appears that by section 38 the assistants or agents to be appointed by the Commissioner or Attorney General are appointed "for the enforcement of the provisions of this act," and in its enforcement have all the powers and protection afforded them by the act and which are "conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States," and that, by section 1 (7) "any act authorized to be done by the Commissioner may be performed by any assistant or agent designated by him for that purpose." There can be no question but that the Commissioner of Internal Revenue is an officer of the United States charged with the enforcement of the Prohibition Law, to whom a search warrant may be issued for service; that the service of such a warrant is the execution of one of the powers essential to the enforcement of the law, and, being an act authorized to be done by the Commissioner, it may, by the express language of the statute (section 1 [7], par. 2), like any other act in the enforcement of the law, be performed by an assistant or agent designated by him for the purpose. Indeed, it is hardly possible to read the provisions of the Prohibition Act and reach the conclusion that the service of search warrant process, as respects the agents appointed by the Commissioner and Attorney General, is limited to those appointed by the Attorney General only. The Commissioner and *his* assistants, not the Attorney General and his assistants, are the officials upon whom the power and duty of enforcing the law is primarily conferred and imposed. The duties of the Attorney General and *his* assistants largely arise after the arrests, seizures, and committals have been made, when prosecutions are to be instituted before the courts. See sections 28, 26, and 2. By section 26 the Commissioner and *his* assistants and inspectors are given the special power, on discovery of any person in the act of transporting intoxicating liquors in violation of law, to seize the liquors and vehicle in which they are being transported and arrest such person without a warrant—the conferring of a power as drastic in nature, as difficult of exercise, and quite as liable to abuse (if not more so) as is the service of a search warrant. And section 6 of chapter 134 of the act of 1921 recognizes that the Commissioner, his agents or employees, engaged in the enforcement of that act or the National Prohibition Act, have authority to search a private dwelling with a warrant issued to them for that purpose, and expressly provides that they shall be guilty of a crime if they search such a dwelling without a warrant.

Furthermore, section 3462 of the Revised Statutes (Comp. Stat. § 6364), which was in existence at the time of the enactment of the Prohibition Act and relates to the control of the manufacture and sale of intoxicating liquors under the laws of the United States, when read in connection with section 28, manifests an intention to enlarge the class of officials named in section 6 of title 11 of the Espionage Act, and to include assistants, agents, or inspectors of the Commissioner of Internal Revenue as officials to whom search warrants may be issued to search premises for liquors possessed or kept in violation of the Prohibition Act, for section 28 of title 2 of the Prohibition Act confers upon the Commissioner, "*his assistants, agents and inspectors,.* * * *

all the power and protection *in the enforcement of"* the *Prohibition Act*, "conferred by law for the *enforcement of* existing laws relating to the manufacture or sale of intoxicating liquors under the laws of the United States." United States v. Syrek (D. C.) 290 Fed. 820; Smith v. Gilliam (D. C.) 282 Fed. 628, 638–640.

We are therefore of the opinion that the provisions of section 6 of the Espionage Act, relating to the officials to whom a search warrant may be issued, are enlarged by the provisions of the Prohibition Act and its amendment, and include the agents and assistants appointed and commissioned by the Commissioner of Internal Revenue for the enforcement of the provisions of the act; that the seizure here in question was lawful and the evidence properly received. Park v. United States (C. C. A.) 294 Fed. 776, and cases there cited.

The judgment of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). In the opinion and decision of the majority I cannot concur. The question is of minor importance in the practical administration of the Prohibition Act, but of much importance in its relation to the security of persons and homes, under the spirit as well as the letter of the Fourth Amendment.

In Park v. United States (C. C. A.) 294 Fed. 776, 790, I was constrained to protest against the extension of police powers "by judicial ruling, not by congressional enactment, at a time when the task of organizing and maintaining an honest, law-abiding, and generally competent police force is infinitely harder than the country ever before faced." The present record presents another situation constraining me to renew this protest.

The majority hold that Pollard, the prohibition agent, was not an officer within the meaning of the Constitution. On that point we are in accord. United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Burnap v. United States, 252 U. S. 512, 40 Sup. Ct. 374, 64 L. Ed. 692. He was a mere employee of the Commissioner of Internal Revenue, who is not the head of a department. But my Brethren hold that section 6 of title 11 of the Espionage Act has been enlarged by (not merely adopted into) the Prohibition Act, so as to vest in these casual employees, called conveniently, but inaccurately, prohibition agents (Heaton v. United States [C. C. A.] 280 Fed. 697), powers which, under section 6 of title 11 of the Espionage Act, are expressly limited to officers and to persons duly authorized by the President of the United States. With that proposition I take issue.

In considering this problem, it is important to bear in mind that search warrants cannot be legally issued simply for the purpose of procuring evidence. Gouled v. United States, 255 U. S. 298, 309, 310, 41 Sup. Ct. 261, 265 (65 L. Ed. 647). As there pointed out by Mr. Justice Clarke:

"Search warrants ᵃ * * 'may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police powers renders the possession of the property by the accused unlawful and provides that it may be taken' "—citing the Boyd Case, 116 U. S. 616, 623, 624, 6 Sup. Ct. 524, 29 L. Ed. 746.

The use of articles found and seized under a search warrant as evidence of a crime is a secondary or collateral result of a search and seizure, grounded, in the case of intoxicating liquor, upon the unlawfulness of its possession and the consequent right (and interest) of the government to seize and destroy it. In the actual administration of the Prohibition Act, the use of liquor so found and seized, for this secondary purpose of evidence of a crime committed, has tended to obscure the real legal basis for the issuance and use of search warrants. Compare Federal Trade Com. v. Baltimore Grain Co. (D. C.) 284 Fed. 886; Federal Trade Com. v. Lorillard Co. (D. C.) 283 Fed. 999; Id., 44 Sup. Ct. 336, 68 L. Ed. ——; United States v. Rembert (D. C.) 284 Fed. 996. As pointed out by this court in Giles v. United States (C. C. A.) 284 Fed. 208, 210, referring to section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m):

"The main purpose of this section is to put intoxicating liquor, illegally possessed, and property designed for unlawful manufacture thereof, into the same category as gambling implements, counterfeit money, obscene literature, and other forms of outlawed articles. Search warrants are an appropriate and long-used means of governmental seizure for destruction of such outlawed articles."

Limited to their legitimate and proper uses, search warrant proceedings play but a minor part in the enforcement of prohibition. Intoxicating liquor cannot be produced, transported, or sold in substantial quantities without furnishing abundant indicia of the illegitimate traffic, easily available to competent and alert police forces.

Much of the resort to search warrant proceedings in prohibition enforcement is either a disguised abuse of process, or an unintended admission of incompetency to administer police powers by orderly and lawful methods. Police powers abused generally result in public exasperation; they provoke the lawlessness they are intended to suppress.

When the Prohibition Act was under consideration, Congress had before it, as is set forth in the government's brief, several statutes providing for the use of search warrants. R. S. § 3462 (Comp. St. § 6364), dealing with search warrants in the Internal Revenue service, reads:

"The several judges of the Circuit and District Courts of the United States, and commissioners of the Circuit Courts, may, within their respective jurisdictions, issue a search warrant, authorizing *any internal revenue officer* to search any premises within the same, if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

Most "internal revenue officers" are not "civil officers," within the constitutional definition, being appointed by the Collector of Internal Revenue. R. S. § 3148. Seizure under section 3462 is a step towards enforcing forfeiture as provided in R. S. § 3453 (Comp. St. § 6355), of goods on which the internal revenue has not been paid.

To the same general import is R. S. § 3066 (Comp. St. § 5769), authorizing search and seizure of smuggled goods, which provides:

"If any collector, naval officer, surveyer, *or other person specially appointed by either of them*, or inspector, shall have cause to suspect a concealment

of any merchandise in any particular dwelling house, store building, or other place, they, or either of them, upon proper application on oath to any justice of the peace, shall be entitled to a warrant to enter such house, store, or other place, in the daytime only, and there to search for such merchandise; and if any shall be found, to seize and secure the same for trial; and all such merchandise, on which the duties shall not have been paid, or secured to be paid, shall be forfeited."

Section 173 of the federal Criminal Code (Comp. St. § 10343) provides for the issuance of search warrants to seize counterfeit coins, plates, etc., to "any marshal of the United States, *or any other person* specially mentioned in such warrant."

Under the Act of March 3, 1917, § 10 (39 Stat. 1127 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3421¼ff]), it is provided that, in the District of Columbia, prohibition search warrants "shall be placed in the hands of the captain, or acting captain, of the police precinct in which the room, house, building, or other place referred to is located." Police captains are officers of the District of Columbia and not of the United States. 17 Op. Attys. Gen. 489; 18 Op. Attys. Gen. 161.

Parenthetically, my inference from this statute is the reverse of that which the government in the instant case would have us draw. In the District of Columbia, Congress did not permit search warrants to be served by ordinary policemen; to the captains only were these drastic powers entrusted.

I cannot accept the argument that, because these statutes do not require search warrants to be issued only to "officers of the United States" within the constitutional meaning of the word "officers," Congress intended in the Prohibition Act to adopt a method much looser than the rule of the common law, which is that such warrants may issue to any person named or described in the warrant. 35 Cyc. p. 1267; Meek v. Pierce, 19 Wis. 318, 321; Miller v. Hogeboom, 56 Neb. 434, 76 N. W. 888; Rex v. Kendall, 1 Ld. Raym. 66.

It is most significant that with all these precedents before it under which authority to serve search warrants was granted to persons not "officers," Congress, when providing in the Prohibition Act for use of search warrants, turned, not to the search warrant provisions referring to smuggled goods or to goods subject to forfeiture because of nonpayment of internal revenue, but to the Espionage Act, which contains a carefully guarded codification, modeled on the New York Criminal Code, § 791 et seq, and on other state codifications. Title 11 of that act, with *all* its procedural limitations and restrictions, is made a part of the Prohibition Act. The only distinction now pertinent is that, under the Prohibition Act, search warrants may be used for finding, and seizing for destruction, outlawed intoxicating liquor; whereas, under the Espionage Act, such warrants may be issued for property stolen or embezzled in violation of a law of the United States, or for "property used as the means of committing a felony." The language in sections 25 and 2, supra, is close and explicit. "A search warrant may issue *as provided in*" and *"under the limitations provided in"* the Espionage Act, "and such liquor and containers thereof and such property so seized shall be subject to such disposition as the court may

make thereof." It seems to me clear that, except *"as provided in"* and *"under the limitations provided in"* the Espionage Act, there is no power to issue search warrants for intoxicating liquor. The majority opinion overrides this plain language of adoption.

If Congress had intended to enlarge the provisions in the Espionage Act as to process servers, when incorporating by reference title 11 of the Espionage Act into the Prohibition Act, instead of using the limit-ing terms "as provided in" (section 6), and "under the limitations provided in" (section 2), language something like the following would naturally have been used: In section 6, "A search warrant may issue to the Commissioner of Internal Revenue, *his assistants, agents and inspectors, in the manner provided* in title XI of" the Espionage Act, etc., and also similar language in the last part of section 2. I can see no warrant for reading these absent words into the adopting act.

In the Espionage Act, we find in section 6, tit. 11, as already pointed out, that the commissioner *must* issue a search warrant "to a civil of-ficer of the United States duly authorized to enforce or assist in en-forcing any law thereof, or to a person so duly authorized by the President of the United States." The warrant is not issuable to any person specially mentioned in such warrant, as in section 173 of the Criminal Code. The statute is plainly in derogation of the common law.

It is well in this connection to consider briefly the importance of the functions vested by the Espionage Act (title 11) in the "civil officer" or the person so "duly authorized by the president of the United States."

"Sec. 7. A search warrant may in all cases be served by any of the of-ficers mentioned in its direction, *but by no* other person, except in aid of *the officer* on his requiring it, he being present and acting in its execution.

"Sec. 8. *The officer may break open any outer or inner* door or window of a house, or any part of a house, or anything therein, to execute the war-rant, if, after notice of his authority and purpose, he is refused admit-tance. * * *

"Sec. 12. When *the officer* takes property under the warrant, he *must* give a copy of the warrant together with a receipt for the property taken (speci-fying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property. * * *

"Sec. 21. An *officer* who in executing a search warrant wilfully exceeds his authority, or exercises it with unnecessary severity, shall be fined not more than $1,000 or imprisoned not more than one year." (Italics mine.)

Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼g, 10496¼h, 10496¼l, 10496¼u.

These sections deal with highly important powers, subject to care-fully defined limitations, to be exercised always by an "officer:"

Could any person not an "officer" be punished under section 21? Compare United States v. Germaine, supra; Heaton v. United States, supra.

Clearly, as we all agree, under the Espionage Act service of these drastic processes was not committed to casual or even to regular agents or employees of a bureau; it was committed only to "civil officers" or to persons "so duly authorized by the President of the United States." Now an officer is a holder of a public station, which embraces the idea of tenure, duration, emolument and duties, and is regarded as

assuring a legal and proper exercise of power. United States v. Hartwell, 6 Wall. 385, 393, 18 L. Ed. 830; United States v. Germaine, supra; 29 Cyc. c. 1366. Federal officers are required to take an oath faithfully to perform the duties of their office. R. S. § 1757 (Comp. St. § 3218); Act May 13, 1884, 23 Stat. 22 (Comp. St. § 3216); 29 Cyc. 1386. Of many officers, like marshals, R. S. § 783 (Comp. St. § 1307); internal revenue collectors, R. S. § 3143 (Comp. St. § 5847); and their deputies, section 3148; clerks of courts, R. S. § 795 (Comp. St. § 1322)—bonds are required, conditioned for the faithful performance of their duties. Such bonds are for the protection of private parties injured by malfeasance in office, as well as for the protection of the government. Howard v. United States, 184 U. S. 676, 687, 22 Sup. Ct. 543, 46 L. Ed. 754.

But not so as to prohibition employees and agents; they are merely the hired assistants of various subordinates, employed and discharged at pleasure. Their position carries no assurance of care and responsibility in exercising the extraordinary powers conferred by such warrants, which are easily capable of oppression and abuse. There is no such official known to the law as a prohibition agent. Heaton v. United States (C. C. A.) 280 Fed. 697. Prohibition agents are not sworn. They give no bond. Victims of their misdoings under claim of federal power are remediless, unless the wrongdoer happens to be financially able to respond in damages, which will be rare. But, armed with search warrants, they may enter premises offering extraordinary temptations to misappropriate property. So equipped, they have powers fully equal to the highest powers vouchsafed marshals and their deputies, or, under state law, sheriffs, and these officers are required to give bonds, with sureties, who must respond for damages accruing from ultra vires acts done virtute officii.

This process may issue to search *the person,* even of a woman. But it is a power expressly and carefully limited by the Fourth Amendment of the Constitution, one of our great guaranties of liberty.

It is hardly to be supposed that Congress meant to grant such extraordinary powers without making adequate provisions to safeguard and protect the public against abuse of them. Under the Espionage Act, a search warrant could be issued to and served by no person other than a "civil officer" unless that person was *"so duly authorized by the President of the United States."* The alternative is significant. Congress obviously deemed the power so important as to intrust it only to a civil officer or to a person duly authorized by the head of the nation. I cannot reconcile this language with the theory that Congress, when enacting the Prohibition Act, intended to place the power of using this delicate and dangerous process in the hands of hundreds of "agents and inspectors in the field service," not even required to take a civil service examination (National Prohibition Act, tit. 2, § 38), a system far looser and more dangerous to personal liberty and public order than the common-law rule, under which the judicial officers issuing search warrants have the responsibility of selecting only fit persons as process servers, just as a judge is responsible for selecting only fit persons as receivers and masters. No one conversant with the method (or lack of it) under which prohibition agents have been chosen,

and the results achieved, would easily conclude that Congress intended to endow such a personnel with such powers for such uses.

We should not overlook that, under the Prohibition Act, Congress provided a field service staff less carefully organized and trained than are our ordinary police forces. In the majority of American cities police forces are, and for many years have been, under civil service. See Fosdick's American Police Systems, p. 270 et seq. Most of our policemen are now selected after some test to determine their fitness for police duties; they are trained to those duties, promoted for faithful service, have tenure, and retirement or pension provisions. Not so as to the "agents and inspectors in the field service," authorized by Congress to be hired by the Commissioner of Internal Revenue. But the police powers exercised by these agents and inspectors are more difficult of proper application, and, if abused, more dangerous to the community, than the powers exercised by the ordinary city policeman.

Another contention is grounded on section 6 of "An act supplemental to the National Prohibition Act of November 23, 1921," 42 Stat. 222, 224 (Comp. St. Ann. Supp. 1923, §§ 10184a, 10196a). It is contended that in this section there is an implied recognition of power in any agent or employee of the United States, engaged in the enforcement of the act, to serve search warrants. That section is as follows:

"Sec. 6. That any officer, agent, or employee of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling, without a warrant directing such search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor and upon conviction thereof shall be fined for a first offence not more than $1,000, and for a subsequent offence not more than $1,000 or imprisoned not more than one year, or both such fine and imprisonment.

"Whoever not being an officer, agent or employee of the United States shall falsely represent himself to be such officer, agent, or employee and in such assumed character shall arrest or detain any person, or shall in any manner search the person, buildings, or other property of any person, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000, or imprisoned for not more than one year, or by both such fine and imprisonment."

This seems to me a strained and unnatural inference. Rather is section 6 a condemnation, in omnibus form, of illegal or improper invasions of personal liberty. Examination of the debate in the Senate on this legislation shows that Congress was then thinking, not of extending search warrant powers beyond the limits set in the original Prohibition Act, but of vindicating the constitutional rights of our citizens to personal liberty and security. Its purpose was directly opposite to that which it is now sought to impute to it. I am unable to agree with the contrary view expressed by the learned District Judge in the case of United States v. Keller, 288 Fed. 204.

The United States attorney finds himself driven to contend that in title 2, § 2 (Comp. St. Ann. Supp. 1923, § 10138½a), is found power to serve search warrants. The language relied on reads:

"The Commissioner of Internal Revenue, his assistants, agents and inspectors, shall investigate and report violations of this Act to the United States attorney," etc.

This contention seems to be grounded on the error, pointed out above, that search warrants may be legally used merely for the purpose of obtaining evidence; whereas, it is settled law that such search warrants may be used only for the purpose of finding and seizing property in which the government (or the owner) has some primary interest other than for its use as evidence. Gouled v. United States, supra. Homes, offices, and persons are not to be invaded and searched as part of an investigation, in a hunt to find violations, and evidence on which to ground criminal proceedings. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Boyd v. United States, 116 U. S. 616, 629, 6 Sup. Ct. 524, 29 L. Ed. 746; Entinck v. Carrington, 19 Howell's St. Tr. 1029; Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338.

The difficulty of sustaining the ruling below in the instant case is further illustrated by the decision of Judge Brewster, of the Massachusetts district, in United States v. Syrek, 290 Fed. 820, that this power may be found in title 2, § 28, of the Prohibition Act, read in connection with R. S. § 3462, referred to above, under which search warrants may be issued to internal revenue officers. On that point, I agree with Judges Dickinson and McKeehan in United States v. American Brewing Co. (D. C.) 296 Fed. 772, 774, that the provisions of the Internal Revenue Law do not apply to the use of search warrants in prohibition cases. In the revenue laws, search warrant provisions deal with the forfeiture of property as an incident in the collection of taxes. Compare Regal Drug Co. v. Wardell, 260 U. S. 386, 43 Sup. Ct. 152, 67 L. Ed. 318; Lipke v. Lederer, 259 U. S. 557, 42 Sup. Ct. 549, 66 L. Ed. 1061; United States v. Dziadus (D. C.) 289 Fed. 837. The Prohibition Act is not a revenue law.

It is doubtless true, as the government argues, that, if we look merely at the number of the decisions in the District Courts, the weight of authority is in favor of the proposition that prohibition agents may serve search warrants. But this argument from authority loses most of its weight when we observe that the grounds upon which the various judges reach this conclusion are irreconcilable. As just stated, Judge Brewster in United States v. Syrek, supra, treats prohibition officers as having the powers conferred upon internal revenue officers, and regards Judge Evans' supplementary opinion in Smith v. Gilliam (D. C.) 282 Fed. 628, 636, as expressing the same view. Judge Hutcheson, in United States v. Montalbano, 298 Fed. 667, March 1, 1924, and Judge Ervin, in United States v. O'Conner (D. C.) 294 Fed. 584, apparently agree with that view. It is significant that these judges seem not to be able to find the power in the combination of section 25 of title 2 of the Prohibition Act with section 6 of title 11 of the Espionage Act. But in United States v. American Brewing Co., supra, Judges Dickinson and McKeehan reject the internal revenue theory, and ground their conclusion upon "the whole spirit and purpose of the act," and perhaps, in part, on the general practice.

In United States v. Keller, Judge Tuttle apparently grounds his result upon section 6 of the Supplemental National Prohibition Act of November 23, 1921, 42 Stat. 223.

In United States v. Loeffelman, 297 Fed. 472, Judge Cant grounds his conclusion in favor of the existence of the power upon "a careful reading of sections 1, 2, 28 and 38," plus a well-established and widely-extended practice and the Supplementary Act of November 23, 1921, 42 Sts. 222, citing United States v. Syrek, supra, and United States v. Daison (D. C.) 288 Fed. 199. But the Daison Case simply deals with arrest by prohibition officers without a warrant, a different proposition, differently grounded, and not now before us. And in United States v. Musgrave (D. C.) 293 Fed. 203, Judge Woodrough rejects all of these theories and holds flatly against the existence of the power, in a closely reasoned opinion.

This state of the rulings in the District Courts warrants the observation that they are nearly, if not quite, mutually destructive. The fact that one judge takes one foundation, and another judge another and entirely inconsistent foundation, indicates strongly, as it seems to me, that there is no solid foundation for the conclusion that Congress intended to vest this power in a multitude of casual employees of the Prohibition Bureau. "If it is law, it will be found in our books; if it is not to be found there, it is not law." By Lord Camden, in Entinck v. Carrington, supra, quoted, in 116 U. S. 627, 6 Sup. Ct. 524, 29 L. Ed. 746.

So, in the majority opinion, it is difficult to find the basis really relied upon for the conclusion reached. My Brethren say that in the Prohibition Act, title 2, § 1 (7), par. 2, it is provided that "an act authorized to be done by the Commissioner may be performed by any assistant or agent designated by him for that purpose"; that the Commissioner is an officer within the meaning of section 6 of title 11 of the Espionage Act, and that therefore his agents and employees (the prohibition agents) may serve search warrants. But there are at least two answers to this proposition:

(1) As already stated, the search warrant powers granted by the Prohibition Act are "as provided in" and "under the limitations provided in" the Espionage Act. And there is no more vital "limitation" than that search warrants shall be served "only by civil officers or persons so duly authorized by the President of the United States."

(2) There is nothing in the record warranting the holding that the Commissioner designated Pollard an agent *"for that purpose."* On the contrary, the necessary inference is that Pollard's appointment was in the usual form, as follows:

"United States Treasury Department                    1924
"No.                       Internal Revenue Service.

"This certifies that John Doe, of ———, is hereby employed as a Federal Prohibition Officer to act under the authority of and to enforce the National Prohibition Act and acts supplemental thereto and all internal revenue laws relating to the manufacture, sale, transportation, control and taxation of intoxicating liquors, and he is hereby authorized to execute and perform all the duties *delegated to such officers by law."* [Italics mine.]

"D. H. Blair, Com'r Internal Revenue.
"[Countersigned] R. A. Haynes, Federal Prohibition Com'r."

This form of appointment properly and expressly limits the authority of prohibition agents to *"the duties delegated to such officers by law,"*

But I would not be understood as implying that, if the Commissioner had undertaken to make Pollard a search warrant process-server, he had power so to do.

Nor can I agree that R. S. § 3462 "enlarges the provisions of section 6 of title 11 of the Espionage Act, and authorizes the issuance of a search warrant" to a prohibition agent, on the theory that section 28 of title 2 of the Prohibition Act confers upon the assistants, agents, and inspectors of the Commissioner "all the power and protection in the enforcement of the Prohibition Act conferred by law for the enforcement of existing laws relative to the manufacture or sale of intoxicating liquors under the laws of the United States." On that point I agree with the views expressed by Judges Dickinson and McKeehan, in United States v. American Brewing Co. (D. C.) 296 Fed. 772, 774, that search warrants "must stand or fall under the authority of the National Prohibition Act"; that the provisions for "search and seizure under the national revenue laws are solely in aid of the collection of taxes." Reliance upon section 28 is, in my view, made untenable by the carefully limiting words in sections 2 and 25, supra.

In the instant case the government's brief discloses the same uncertainty as to any safe ground on which to base the crucial contention. It is first argued that "the term 'officer' was used in section 6 of title 11 of the Espionage Act in the broad or popular, and not in its narrowest constitutional, sense." This amounts to nullifying the plain language of section 6, requiring a warrant to be issued to a civil officer or to a person duly authorized by the President. I agree with my Brethren in rejecting that view.

Learned counsel, apparently themselves doubtful of the soundness of this construction, then urge:

"If the term 'officer' was used in section 6, title 11, of the Espionage Act in its narrowest constitutional sense, that term was not adopted, or, if adopted, was adopted with its broad or popular meaning into the National Prohibition Act."

So to hold would, as I think and have already stated, nullify the explicit provisions of the adopting act that search warrants may issue "as provided in" and "under the limitations provided in" the Espionage Act.

The limitation as to a responsible personnel of process servers cannot be read out of the Prohibition Act on the theory that they are not applicable and appropriate to the purpose of the adopting act. Lewis' Sutherland, St. Const. (2d Ed.) pp. 787, 788; 36 Cyc. p. 1152. Compare Francis Drug Co. v. Potter (D. C.) 275 Fed. 615.

They are eminently appropriate. In the Espionage Act Congress was dealing with things used in felonies; in the Prohibition Act, with things used in misdemeanors only. Is it conceivable that Congress would be less careful as to the personnel empowered to invade offices and homes, and even to search persons, when providing for seizing illegally possessed beer than when authorizing search for burglar's tools? The constitutional rights of misdemeanants as to liquor are not to be less scrupulously protected than the constitutional rights of felons.

I cannot believe that these limitations as to process servers were lost in transit on the journey of the Espionage Act into the Prohibition Act.

Finally, my conviction that the mere employees of the Commissioner of Internal Revenue were not intended by Congress to be armed with search warrant powers finds further strong support in title 2, § 38, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §· 10138½y), an aspect of the problem that, strangely enough, seems to have been overlooked. I regard it as of vital import. I quote:

"The Commissioner of Internal Revenue and the Attorney General of the United States are hereby respectively authorized to appoint and employ such assistants, experts, clerks, and other employees in the District of Columbia or elsewhere, and to purchase such supplies and equipment as they may deem necessary for the enforcement of the provisions of this act, but such assistants, experts, clerks, and other employees, except such executive officers as may be appointed by the Commissioner or the Attorney General to have immediate direction of the enforcement of the provisions of this act, and persons authorized to issue permits, and agents and inspectors in the field service, shall be appointed under the rules and regulations prescribed by the Civil Service Act."

Here is a broad power vested in the Attorney General, the head of a department within the meaning of the Constitution, to "appoint and employ such assistants" as he "may deem necessary for the enforcement of the provisions of this act."

Manifestly, such assistants would be civil officers within the strict meaning of the Constitution and of the Espionage Act. They would be subject to control and removal by the chief law officer of the government. I think that Congress put the responsibility for an efficient personnel, fitted by selection and by appropriate instructions, to administer a power always calling for great care, caution and trained respect for constitutional liberty, upon the Attorney General. Such method of dealing with the problem is obviously consistent with sound policy. I think it consistent with the language of the statutes. This view of the law leaves the government unhampered in making any necessary or proper use of search and seizure as a means of prohibition enforcement. The power to serve a search warrant is nearly, if not quite, as important and as dangerous as the power to issue one; and the power to issue is vested only in courts and in judicial officers. There is no reason why, under existing law, the Attorney General should not select persons of the requisite intelligence and training, issue to them appropriate instructions, and delegate to them, in each district, the exclusive power and responsibility of serving search warrants. With such assistants, plus some additional care by Commissioners to follow the plain directions of the statute, we might hope for law enforcement that would command more general public respect and obedience, and provoke less irritation and revolt.

It is hardly necessary to add that, under section 6 of title 11 of the Espionage Act, the President may, at any time, authorize any persons, whether prohibition agents, or however otherwise designated, to serve search warrants in prohibition cases.

When I consider the nature of the search and seizure power, its constitutional limitations, the debates in Congress as to its use, even in relation to property used to commit a felony, I am constrained to the view that only plain language would warrant us in holding that Congress intended to vest such a power in a mass of employees selected, as the

prohibition officers are, to deal with misdemeanors merely. I find no such plain language, but the reverse.

The result is that I am constrained to the same conclusion reached in the carefully considered opinion of Judge Woodrough in United States v. Musgrave (D. C.) 293 Fed. 203. Indeed, that opinion leaves very little necessary to be said on the problem.

The rulings excepted to were, I think, erroneous. Gouled v. United States, supra; Amos v. United States, 255 U. S. 313, 41 Sup. Ct 266, 65 L. Ed. 654; Giles v. United States (C. C. A.) 284 Fed. 208.