## UNITED STATES v. CITY PRODUCTS CO.

(District Court, D. New Jersey. December 4, 1926.)

Criminal law ⬤➾394—Intoxicating liquors ⬤➾249—Seizure of entire brewery held invalid, and evidence inadmissible, under warrant authorizing seizure of intoxicating liquors only, regardless of averments of affidavit.

Where affidavit prayed for search warrant authorizing seizure of an entire plant, and where warrant described affidavit as one praying for permission to "seize all and singular intoxicating liquors on the property herein described," and bid the officers "search the said premises for all and singular the articles and things above described and specified," *held*, a seizure of the entire plant involved was unwarranted, and suppression of evidence obtained thereby necessary.

On motion by the City Products Company to quash a search warrant and suppress evidence in criminal proceeding by the United States. Motion granted.

John A. Matthews and Merritt Lane, both of Newark, N. J., for the motion.

Walter G. Winne, U. S. Dist. Atty., of Hackensack, N. J. (Harlan-Besson, Asst. U. S. Dist. Atty., of Hoboken, N. J., of counsel), opposed.

RUNYON, District Judge. Upon the affidavit of one Willard E. Barcus, a federal prohibition agent, the search warrant here sought to be quashed was issued. Said affidavit, after reciting that on the 1st day of June, 1926, the deponent, in company with another agent, saw a truck come out of the gates of the City Products Company in Elizabeth, N. J., and travel in the direction of Newark, proceeds to tell how the two agents, in company with a Newark policeman, stopped the truck, arrested the driver, seized 80 half barrels of unlabeled beer, which were on it when it left the City Products Company's entrance, and later had it tested; the test revealing the presence of 4.60 per cent. of alcohol by volume.

After this recital, the affidavit further contains the following:

"By reason of said facts in above recital, and in consideration thereof, I have good reason to believe, and do verily believe and say, that the establishment of the said City Products Company hereinabove described has been, on or about the 1st day of June, 1926, and is now being, conducted, operated, and maintained by the said City Products Company without a permit to operate a dealcoholizing plant or brewery, in violation of the National Prohibition Act, in that cereal beverage has been and is now then and there unlawfully being manufactured, possessed, sold, and disposed of on said brewery premises, contrary to the law in said case made and provided; that there was contained, in and upon said premises above described, large quantities of cereal beverages in tanks, casks, barrels, and other containers, and also machines and materials, as to the exact nature and description of which the deponent is uninformed, all of which is designed for the manufacture of cereal beverage, and were unlawfully had and possessed by the said company, and were and are intended for use upon said premises, in violation of title 2 of the act of Congress known as the National Prohibition Act, contrary to the form of statutes in such case made and provided, and against the peace and dignity of the United States of America.

"Wherefore deponent prays that a search warrant be issued under the authority of title 2, of the National Prohibition Act, to Jesse L. Thompson, deputy federal prohibition administrator, and his aids, assistants, and deputies, Willard E. Barcus and William C. Mueller, or the United States marshal, his deputies, assistants, or aids, to enter and search, in the daytime, the premises above described, belonging to and occupied by said City Products Company, and then and there seize and secure the same, and take possession of all and singular the articles and things above described, which then and there may be possessed and located in and upon any part or parts of said premises, and hold the same as provided by law."

This affidavit was sworn to on June 10, 1926. The search warrant issued thereon, after setting out the main allegations as above outlined, contains this language:

"And whereas, in and by the said verified application so made and presented to me, the said Willard E. Barcus prays that a search warrant be issued under the National Prohibition Act, authorizing him, his assistants and deputies, to enter the above-described premises and therein search all the above-described premises and buildings within the said premises of the City Products Company, of the city of Elizabeth, Union county, and state of New Jersey, and then and there seize all and singular intoxicating liquors on the property herein described;

"And whereas, upon the examination of the said application under oath and upon his affidavit, I am satisfied and hereby find that there is probable cause to believe that proper grounds for the application for a search warrant exists;

"Now, therefore, you are commanded, in the name and by the authority of the Presi-

dent of the United States, forthwith to enter the premises above described, and with the necessary and proper assistance of persons by you authorized, acting in your presence, in the daytime, then and there to search the said premises for all and singular the articles and things above described and specified, which then and there may be found to be located in and upon the premises above described, or in and upon any part thereof, and to seize and bring the same before me.

"You are hereby commanded to make due execution of this warrant within ten (10) days from the date hereof and forthwith to make due return to me, together with a written inventory of the articles and things seized by you by authority of this warrant."

The warrant, having been addressed, among others, to Barcus himself, the maker of the affidavit, was taken by him and executed. Upon the back of the warrant appears this return:

"6/16/26.

"Served search warrant this date along with 11 agents. Found brewery in full operation and arrested 12 men; found that this brewery was was manufacturing beverage of more than one-half of 1 per cent. alcohol by volume and the said brewery has no permit.

"I hereby state that this brewery is now seized, and all the property, fixtures, machinery, finished product, and all miscellaneous articles, including office equipment and garage which is on brewery property; all trucks and autos that are now on brewery property, are seized and are now the property of United States government.

"Samples of product taken from all vats in brewery. Beer test taken from truck, bottled, 1.05 per cent.; beer test taken from vats, 3.25 per cent.

"Served search warrant.

"W. E. Barcus, Pr. Agt."

The signature of Barcus was followed by those of 13 others. In addition to this return there was a further one bearing date June 23, 1926, and duly sworn to before the United States commissioner who issued the warrant. This return reads as follows:

"Return of Seach Warrant.

"I, Willard E. Barcus, federal prohibition agent for the state of New Jersey, the officer by whom this warrant was executed, do swear that I executed the within warrant on the 16th day of June, 1926, by searching the premises as commanded therein, and by leaving a copy of the warrant together with an inventory and receipt for the property taken, specifying the property in detail with the person from whom it was taken, and in whose possession it was found, which said inventory was made publicly, in the presence of the person from whom the property was taken, and in my presence, and which inventory is as follows: Samples of product taken from all vats in brewery. Beer test taken from truck, bottled, 1.05 per cent.; beer test taken from vats, 3.25 per cent. And I do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant. W. E. Barcus, Federal Prohibition Agent.

"Sworn to and subscribed before me this 23d day of June, 1926. Joseph R. Conlon, United States Commissioner, District of New Jersey."

The documents hereinabove referred to I have set out in considerable detail as having a very distinct bearing upon the present situation. Referring again to the affidavit of Mr. Barcus, upon which the search warrant was issued, it is to be noted that he prays therein that a search warrant be issued allowing various federal representatives *"to enter and search,* in the daytime, *the premises above described,* belonging to and occupied by said City Products Company, *and then and there seize and secure the same,* and take possession of all and singular the articles and things above described, which then and there may be possessed and located in and upon any part or parts of said premises, and hold the same as provided by law"—a petition manifestly contemplating the seizure of the plant.

And while the warrant, in referring to the aim of the verified application of Barcus, describes it as one praying only for permission to "seize all and singular intoxicating liquors on the property herein described," the directory phrasing of the warrant does not confine the agents within such narrow limits, but bids them "search the said premises for all and singular the articles and things above described and specified," etc., and this language, even by the narrowest construction which can be put upon it, includes many articles and things in addition to "all and singular intoxicating liquors."

The interpretation which Barcus put upon the permission given him is best evidenced by the original return made by him, and which appears on the back of the warrant. He had asked for leave to seize the premises, and that is exactly what he did, as the language of the return shows: "I hereby state that this brewery is now seized, and all the property, fixtures, machinery, finished product, and all miscellaneous articles, including

office equipment and garage which is on brewery property; all trucks and autos that are now on brewery property are seized and are now the property of United States government."

It was this return of June 16, 1926, which appears on the defendant's copy of the search warrant, and there is nothing to show that the government has in any wise taken steps to right the abuse of process committed in the seizure of the entire brewery premises, together with all personalty thereon contained.

Certainly the return sworn to on June 23, 1926, does not effect such object, for in the body thereof appears a reference to the original inventory and receipt left with the defendant "for the property taken" on June 16, 1926, set forth as being a compliance with the requirements established in connection with the execution of search warrants, and which is a statement of the seizure of the entire plant and accessories. Neither does the statement in the later return, that the only property "taken" by Barcus on the warrant was samples, cure the wrong. In other words, there are two versions of the same event, the first signed by Barcus and Mueller, prohibition agents specifically named in the warrant, and by a dozen others, "aids, deputies, or assistants," and which remains of record in the files, not contradicted, but partially confirmed by the return constituting the second version, and signed by Barcus alone, which says that samples only were "taken."

As a matter of fact, the whole brewery premises and all the personal belongings thereof were "taken," or attempted to be taken, and while the samples were the only portion thereof to be taken away physically, these same samples constituted a portion of the all-embracing seizure of June 16, which has in no way been disavowed, unless we can gather from the language of the second return that the "taking" of the easily portable samples only was a renouncing of the remainder of the original seizure. This interpretation is not possible, because the samples were the only things actually taken away in the original instance, when the seizure included everything, and no added significance attaches to the mere repetition of a portion of the original return as appears in the later one.

In my opinion, the seizure undertaken by the prohibition officers by virtue of the supposed authority of the search warrant was illegal, and must result in its being set aside in its entirety, and any evidence obtained thereunder suppressed. In the case of Mellet & Nichter Brewing Co. v. United States

(D. C.) 296 F. 765, Judge McKechan speaks as follows:

"On September 12, 1923, * * * the United States commissioner * * * issued a search warrant to said Tippett, * * * and aids, commanding them to enter upon the defendant's premises, * * * to search * * * for the articles and things described in the warrant and to seize and bring same before him. * * * I am of the opinion * * * that irrespective of the existence of a permit, the seizure of the real estate and entire plant and equipment of this defendant, under the guise of a warrant of search and seizure, was illegal. * * *

"On the second point above referred to, the prohibition agent and the United States marshal, or rather whatever law officers of the government have directed and supervised their action in this matter, have entirely misconceived the nature and purpose of a warrant of search and seizure and have disregarded the plain language of the statute and the terms of the warrant. A search warrant is an order in writing in the name of the sovereign, signed by a duly authorized officer of the sovereign and directed to a peace officer, commanding him to search for personal property and bring it before the officer signing the warrant. It cannot be used as a cloak for dispossessing a man of his real estate. Section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m), after declaring that it shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violation of the act and that no property rights shall exist in any such liquor or property, provides that search warrants for the enforcement of this provision may be issued as provided in title 11 of the Act of June 15, 1917, generally known as the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v). Sections 3 and 6 of the Espionage Act (sections 10496¼c, 10496¼f) provide that if the judge or commissioner is satisfied of the existence of grounds for issuing a warrant under the terms of that act, he shall issue a warrant to a civil officer of the United States commanding him to forthwith search the person or place named for the property described in the affidavit 'and to bring it before the judge or commissioner.' * * *

"Disregarding the language of the act and the terms of the warrant, the seizing officers have brought no property before the commissioner, but, instead, have entered upon and seized the entire plant, premises, and equipment of the defendant company, have placed

the property under guard, excluding the defendant from possession, and have made no return to the officer issuing the warrant further than the filing with him of an inventory of all the property found on the defendant's premises, including a considerable number of fixtures, also dealcoholizers which are presumably not used in the manufacture of illegal beer, and a considerable amount of property which is at best related very incidentally and remotely to the manufacture of beer.

"* * * In any case in which a warrant of search and seizure may lawfully issue under the act, it would seem that liquor found to be illegally possessed, together with its containers, and personal property peculiarly adapted to and used in the manufacture of such liquor, may be seized; but some regard should be had to the degree of connection between any given piece of property and its illegal use in the manufacture of liquor. I doubt very much whether the statute authorizes the government to seize the hay that feeds the horse that hauls the cart that carries the hops, et cetera. Furthermore, the mandate of the statute and of the warrants issued thereunder that the seized property shall be brought before the officer issuing the warrant should be carefully complied with."

And in the further case of United States v. American Brewing Co. (D. C.) 296 F. 772, the court says, in part:

"There is, however, running all through these proceedings and exhibited in the application for and the execution of and return made to these search warrants, a total misconception of what a search warrant is and its function. The most casual glance discloses that the thought was that the search warrant is a writ, in the nature of an attachment or execution, which directed a levy to be made upon all the property found upon the designated premises, with a clause of dispossession and sequestration added. This is made evident, not only by what is usually done in execution of the writ, but also by the return made. There is a levy upon everything found, a full inventory made, the things seized are left impounded upon the premises, of which possession is kept and held, at least to the extent of placing a guard or watchman in charge, and always by a warning to the owner that none of the impounded property is to be touched.

"All of this is founded upon a mistake. The service and execution of all of these search and seizure warrants must be set aside. As we have observed, the method of execution was based on a total misconception of what a search warrant is and was not a compliance with either the language of the statute or the mandates of the warrants, both of which require that the seized property shall be brought before the officer issuing the warrant. The continued presence of the executing officers on the premises of the defendants is without warrant of law. They had no right to remain on the defendants' premises longer than was reasonably necessary to make a search and remove such personal property as they were authorized to seize."

It may well be that a proper execution of the search warrant, evidenced in the seizure alone of such intoxicating liquors as might have been found, could have withstood attack; but the existing circumstances of the actual seizure, to my mind, do away with any such possibility.

An order to make effective the foregoing findings may be presented.